SAMUEL T. GOLDBERG and ISAAC GOLDBERG, Respondents, v. POPULAR PICTURES CORPORATION, Appellant, Impleaded with LONDON & LANCASHIRE INDEMNITY COMPANY OF AMERICA, Defendant.

SAMUEL T. GOLDBERG and ISAAC GOLDBERG, Respondents, v. LONDON & LANCASHIRE INDEMNITY COMPANY OF AMERICA, Appellant, Impleaded with POPULAR PICTURES CORPORATION, Defendant.

First Department, May 18, 1917.

Contract — agreement relating to manufacture and exhibit of moving picture films construed — action on bond of surety company insuring due performance by exhibitor — defenses — violation of contract by plaintiff by selling same film to other exhibitor — offset — moneys received from other exhibitor.

The plaintiff agreed to manufacture and deliver to the defendant a moving picture film which the defendant was to have the sole right to exhibit in the United States and Canada and on the delivery of the film the defendant was to advance to the plaintiff the actual cost of manufacture, not to exceed $14,000. The defendant also agreed to pay to the plaintiff fifty per cent of its gross receipts from the exhibition of the film, but the plaintiff was not to be entitled to said percentage until the defendant had first reimbursed itself out of the receipts for the manufacturing cost advanced to the plaintiff on delivery of the film, so that the original cost of manufacture was ultimately to be borne solely by the plaintiff out of its share of the receipts of the defendant. To secure performance the defendant gave a bond of the defendant surety company, upon which this action is based, which recited and referred to the aforesaid agreement and provided that nothing therein contained shall

modify the right of the defendant to repayment of the advances made to the plaintiff out of the moneys realized by the defendant on said production. The answer of the defendants alleged that acceptance of the film was refused because the plaintiff had delivered to another exhibitor substantially the same film under an agreement by which the plaintiff was to receive from the other exhibitor a percentage of its receipts from the production of the picture in the United States and Canada and that it had actually received certain sums of money from said exhibitor.

*Held,* that the obligation of the defendant surety company to pay arose, not only when there was an acceptance of the film manufactured by the plaintiff, but also when the plaintiff in other respects did what it was required to do under the contract, and that hence the special defenses aforesaid are good and the plaintiff is not entitled to recover the full amount of $14,000, as the moneys received from the other exhibitor should be offset against the claim.

APPEAL in each case by the defendants, Popular Pictures Corporation and London & Lancashire Indemnity Company of America, from orders of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 17th day of April, 1917, granting the motions of the plaintiffs in each case for judgment upon the special defense pleaded in the answers of the defendants.

*Milton M. Goldsmith,* for the appellants.

*Gustavus A. Rogers,* for the respondents.

DAVIS, J.:

On April 14, 1916, plaintiffs and the defendant Popular Pictures Corporation entered into a written contract whereby the plaintiffs agreed to manufacture and furnish to said defendant on or before June 22, 1916, a feature motion picture of not less than 4,500 feet. The thing to be furnished by plaintiffs was an original negative and a sample print thereof. On its part said defendant agreed that for the right to handle, that is to rent, exhibit or otherwise use these motion picture films in the United States and Canada, the defendant would pay to the plaintiffs upon the receipt of the negative and sample print the actual cost of manufacturing the motion picture production, including overhead charges, all not to exceed $14,000. In addition to the $14,000, the defendant agreed to pay the plain-

tiffs, for the privilege of handling the production, fifty per cent of the gross receipts of the production and use of the motion pictures. However, the plaintiffs were to receive no part of these gross receipts until the defendant Popular Pictures Corporation had been reimbursed therefrom for the advance of the $14,000 to the plaintiffs. In other words, the original cost of the production was to be borne ultimately and solely by the plaintiffs out of their fifty per cent of the gross receipts. Although the defendant was to advance the $14,000, it was not to be charged with any part of the expense of manufacture.

Under paragraph 10 of the contract the defendant Popular Pictures Corporation agreed to furnish a surety company bond in the sum of $14,000 running to the plaintiffs "that it will make the payments specified herein to be made by it, and perform the conditions of this contract to be performed by it in respect to the payment of the said sum of $14,000 before mentioned." The giving of this bond was to depend upon the plaintiffs first depositing to their own credit $14,000 to be held for the sole purpose of making the motion picture production in question.

The bond was given as agreed and was executed by the Popular Pictures Corporation as principal and the defendant indemnity company as surety. After reciting the making of the agreement referred to and the provision as to the payment of the $14,000 by the Popular Pictures Corporation, the bond provides: "Now the condition of the above obligation is such that if the said Popular Pictures Corporation, its successors or assigns, shall well and truly make the payment of the cost of the said photo play up to and inclusive of the sum of Fourteen Thousand ($14,000) Dollars at the time and in manner provided to be made by the terms of said contract, then this obligation is to be void; otherwise to be and remain in full force."

In the 17th paragraph of the agreement provision is made for certain changes in the method of distributing the pictures and a consequent change in the proportion of gross receipts to be paid, and the paragraph ends: "But nothing herein contained shall alter or modify in any way the agreement and obligation of the distributor to pay in advance on account of future receipts to the manufacturers, the entire cost of such production

up to the sum of Fourteen thousand ($14,000) Dollars for said production at the time. of delivery, as hereinbefore set forth, and the right of the distributor to repayment of such advance out of moneys realized on said production."

The latter provision makes it clear that the plaintiffs were ultimately to bear the whole expense of manufacturing the film.

The action is brought on the bond to recover $14,000. The plaintiffs stipulated that the action is brought upon the bond annexed to the complaint, and that the cause of action is to recover upon the condition in the bond. The complaint sets forth the agreement between the plaintiffs and the defendant Popular Pictures Corporation, the execution and delivery of the bond by both defendants, the fact that plaintiffs prior to June 22, 1916, made and produced a photo play at a cost of $14,000 and over, and due performance by plaintiffs of the conditions of the contract to be performed by them. The complaint also alleges that prior to June 22, 1916, the plaintiffs delivered to the defendant Popular Pictures Corporation the original negative and sample prints of said photo play as required by the contract, but that defendant Popular Pictures Corporation refused to accept delivery of the photo play and has refused to distribute the same as provided in the agreement. It is then alleged that after tender of delivery of the photo play and the negative and sample prints thereof, the plaintiffs demanded from both defendants the payment of $14,000 as provided in the bond; that payment was refused, to the damage of plaintiffs in the sum of $14,000.

The defendants served separate answers. Each answer contains a separate and distinct defense to the claim of $14,000. The substance of the Popular Pictures Corporation's defense, upon which judgment has been rendered for the plaintiffs, is that subsequent to the tender of the photo picture to the defendant Popular Pictures Corporation, the plaintiffs revised and reconstructed the picture and delivered it to another distributor, the Mutual Film Corporation, under an agreement whereby plaintiffs were to receive sixty per cent of the gross receipts from the use of said revised picture in the United States and Canada; that plaintiffs actually received on account thereof from said Mutual Film Corporation $7,200; that plaintiffs have

realized $1,300 through selling the right to produce the film in Russia, Australia and New Zealand, and are about to sell the English rights for the sum of $1,500, and that the exhibiting rights in the unsold territory are worth not less than $1,500, all of which is more than the proper cost of the picture. Defendant further alleges in this defense that the returns from the Mutual Film Corporation which will become due to the plaintiffs will not be less than $9,000 in addition to the $7,200 already received by plaintiffs, and that the contract made between plaintiffs and the Mutual Film Corporation was made without the consent of defendant, and that all of the terms of said contract are not known to defendant.    The answer of the indemnity corporation contains substantially the same defense.

The learned court at Special Term took the view that this defense was insufficient in law, and for that reason ordered judgment for the plaintiffs upon that defense in each answer, and the appeals are from those two orders.

The bond upon which the action is brought does not insure the performance of all the provisions of the contract between the parties thereto.    The bond has reference only to the payment of the $14,000 " at the time and in manner provided to be made by the terms of said contract;" that is, the surety agrees to pay the $14,000 in case the principal does not pay.    The surety's obligation to pay the $14,000 arises only when the plaintiffs have fully performed and the Popular Pictures Corporation has failed to pay the $14,000.    The defendant indemnity corporation claims that it is obligated to pay only when the photo picture is accepted and the Popular Pictures Corporation has failed to pay the $14,000.    If this were so the complaint would have to be dismissed, as there was no acceptance by the Popular Pictures Corporation.

I think the surety's obligation to pay arose not only when there was an acceptance of the film, but also when the plaintiffs made a good tender of delivery, and in other respects did all that was required of them under the contract and there was a refusal to accept.    But the plaintiffs claim to be entitled to recover the full sum of $14,000 as the cost of the photo picture, notwithstanding the fact that they have received revenues arising from the exhibition of the film in the United States

and Canada by another distributing company. The contract between the plaintiffs and the defendant distributing corporation never contemplated such a result. Under that contract the $14,000 was to be paid ultimately out of plaintiffs' share of the gross receipts. They were to receive nothing on account of gross receipts until the distributor had been reimbursed out of plaintiffs' share of the gross receipts. Of course, if, as was not probable, there should be no gross receipts, the $14,000 expense of manufacturing would be upon the distributor. The clear meaning of the contract is that the defendant Popular Pictures Corporation must ultimately pay that part of the $14,000 which is not canceled by plaintiffs' share of the gross receipts. And the bond follows this line of liability, and the surety must respond to the plaintiffs only for such part of the $14,000 as is not canceled by plaintiffs' share of the gross receipts, it being the intention that plaintiffs should pay for the cost of making the pictures out of the revenues from its exhibition and sale. The purpose of the bond is to insure to the plaintiffs revenues from the exhibition of the film in the United States and Canada sufficient to pay the cost of manufacturing the picture. The defendants undertake to pay the difference between the cost of manufacturing ($14,000) and the amount of gross receipts derived from the picture in the United States and Canada. This difference is the only damage suffered by the plaintiffs for which under this bond the defendants agreed to hold themselves liable. If this defense is established the plaintiffs' damage does not amount to $14,000. It is true they have received no receipts from the defendant Popular Pictures Corporation, but that fact is not important if in fact plaintiffs have received receipts from other sources for the use of the film in the same territory, that is, the United States and Canada. The defendants are liable under the bond only for the damages actually suffered by plaintiffs. It follows, therefore, that they have the right to offset against the claim of $14,000 such sums as the plaintiffs have received from the renting of the film to the Mutual Film Corporation for the use of it in the United States and Canada, but not elsewhere. It was never contemplated that the plaintiffs should have $14,000 in addition to receipts from the exhibition of the picture.

First Department, May, 1917.            [Vol. 178.

For these reasons I think the defenses are good and that the two orders of the Special Term should be reversed, with ten dollars costs and disbursements, and the motions for judgment denied, with ten dollars costs.

CLARKE, P. J., LAUGHLIN, SCOTT and SHEARN, JJ., concurred.

Orders reversed, with ten dollars costs and disbursements, and motions denied, with ten dollars costs.